IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 27, 2015

## STATE OF TENNESSEE v. EMILY VIRGINIA HELTON

**Appeal from the Circuit Court for Bedford County**
**No. 17970     Lee Russell, Judge**

_____

**No. M2015-00980-CCA-R3-CD – Filed December 10, 2015**

_____

Pursuant to a plea agreement, the Defendant, Emily Virginia Helton, pleaded guilty to promotion of methamphetamine manufacture, with the trial court to determine the sentence. After a hearing, the trial court ordered the Defendant to serve three years and six months in the Tennessee Department of Correction. On appeal, the Defendant asserts that the trial court erred when it denied her an alternative sentence. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Karen Hickey, District Public Defender; and Andrew Jackson Dearing, III, Assistant District Public Defender, for the appellant, Emily Virginia Helton.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Senior Counsel; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

A Bedford County grand jury charged the Defendant with promotion of methamphetamine manufacture, a Class D felony, committed on December 6, 2013. On March 20, 2015, the Defendant entered an open plea to the indictment. At the guilty plea

submission hearing the State offered the following factual summary as a basis for the guilty plea:

> [O]n December 17th, 2013, Deputy Steven Daugherty of the Bedford County Sheriff's Department conducted a traffic stop of the vehicle. It was being driven by the [D]efendant. He ran a check of her driver's license and it revealed that she was driving on [a] suspended driver's license. So, he placed her under arrest as a result of that.
>
> He transported her to the jail for booking. As part of that process, he ran her purchase log history with the Tennessee Meth Task Force for her purchase history of pseudoephedrine. And it showed that in the month of December, she had made three different purchases. One on December 1st at the Walgreens here in Shelbyville; one on December 5th at the Walgreens in Murfreesboro; and one on December 6th at the Walgreens her [sic] in Shelbyville. It also showed that on December 6th, about an hour and fifteen minutes after she made that purchase, she attempted another purchase, and that was blocked.
>
> So, he called in Agent Shane George of the Drug Task Force, who I would submit is a specialist in the investigation of meth-related crimes. They interviewed her about, specifically about the purchase on December 5th and December 6th. She said she purchased those for James Cody Tucker. They said, Well, [sic] we know that he is a meth cook in this area. She ultimately did admit that, yes, she knew that he was a meth cook, and that she purchased those boxes for Mr. Tucker with knowledge that he would then use them in the production of methamphetamine.

At the sentencing hearing, the State submitted the presentence report and a transcript of the guilty plea submission hearing. The State also submitted a document confirming that the Defendant never attended the University of Alabama as she had testified to at the plea submission hearing. Next, the State submitted documentation that the Defendant was charged with domestic assault, which was retired, but arising from this charge was a failure to appear, to which the Defendant pleaded guilty. The State submitted a subsequent probation revocation warrant arising from the failure to appear conviction. The presentence report indicated that this probation revocation was pending in General Sessions Court at the time of the sentencing hearing. The State then submitted a February 10, 2015 warrant for failure to appear on the probation revocation warrant "and some other case numbers." This second failure to appear charge was still pending at the time of the sentencing hearing. The State submitted an additional March 11, 2015 failure to appear warrant that was likewise still pending in General Sessions Court.

Finally, the State submitted two warrants: one for driving on a suspended license, and one for possession of drug paraphernalia, both pending in General Sessions Court.

Steven Austin testified that he was the founder and president of Life On Target Recovery Center in Murfreesboro, Tennessee, a drug rehabilitation facility. Mr. Austin stated that he had spoken with the Defendant both in person and by phone and he had spoken with the Defendant's family members. Based upon these conversations, Mr. Austin recommended that the Defendant would be a good candidate for and would benefit from six months to a year in a residential treatment facility. Mr. Austin explained that his facility offered only outpatient services for women and he believed the Defendant needed long-term residential treatment. He recommended a facility, Bethel Colony Transformational Center, located in New Orleans, Louisiana. He stated that he had placed sixty or seventy women at this facility in the past five years and had ongoing involvement with the Bethel Colony Transformational Center. Mr. Austin testified that Bethel Colony Transformational Center was a faith-based, Christ-centered program that employed both pastoral counselors and clinical counselors.

The Defendant testified that she was thirty-one years old and had been housed at the Bedford County Correctional Facility for fifty-five days. The Defendant confirmed that the convictions listed on the criminal history report were correct and stated that the offenses were related to her "drug habit." The Defendant stated that she was enrolled in college at Shelton State University in Tuscaloosa, Alabama, and through this program she was required to take certain classes at the University of Alabama. She agreed that she was never a full-time student at the University of Alabama.

The Defendant testified that she had "stomach problems," seizures, and post-traumatic stress disorder based upon her "father being in and out of prison" and problems that were "the result of using illegal drugs." The Defendant began drinking alcohol at age thirteen and continued drinking for nine years. The Defendant quit drinking when she "got a DUI" in 2006 and then began drinking again in 2012. The Defendant said she began using marijuana at the age of twelve, smoking one joint a day in high school. The Defendant began using pain pills "occasionally" from age fourteen to age eighteen. The Defendant explained that she would have bad headaches that would trigger her seizures, so she was prescribed pain pills to manage the headaches. The Defendant became addicted to pain pills.

The Defendant testified that she had used acid on a daily basis. She began using cocaine at age seventeen and "immediately had a problem with it." She also began using heroin at this time and stated that her supplier had been her boyfriend at the time. The Defendant testified that she "quit" for five years, but then had "a lot of thing[s] happen all at once," and began using drugs again when she was twenty-eight years old. The

3

Defendant stated that she began using Percocet and "Roxy," and she explained that this helped "numb" her problems. The Defendant then substituted methamphetamine and cocaine for the pain pills, eventually using heroin again at age thirty. She stated that heroin had the same effect as the pain pills, but she could obtain it for "cheaper."

The Defendant testified that she was running from her problems and realized that she was getting "in more and more of a mess." It was at this point that she contacted Mr. Austin and spoke with him about her "problems." The Defendant stated that she had a nineteen-month old son, and she wanted treatment to improve her life and that of her son. The Defendant stated she needed help, and she was willing to comply with whatever conditions required if granted an alternative sentence involving treatment.

On cross-examination, the Defendant agreed that she was released on bond for a September 11, 2013 felony theft charge when she committed the current offense on December 6, 2013. The Defendant agreed that she had numerous forgery charges in Lincoln County and convictions for passing a worthless check and theft under $500 in Williamson County. The Defendant confirmed that she had a June 2014 failure to appear conviction in Marshall County and a probation revocation in February 2015. She agreed that she had a probation revocation and two failure to appear charges pending in General Sessions Court.

After hearing this evidence, the trial court considered the purposes of sentencing, the evidence presented at the sentencing hearing, the presentence report, the principles of sentencing and the arguments as to alternative sentencing. The trial court first concluded that the Defendant was a Range I offender with a sentencing range of two to four years. It then considered the Defendant's two felony convictions and "enormous number of misdemeanor convictions." The trial court noted that the Defendant had three probation sentences revoked and that she was on bond for felony theft at the time she committed this offense. In mitigation, the trial court acknowledged that the Defendant had pleaded guilty and her conduct neither caused nor threatened serious bodily injury. As to alternative sentencing, the trial court stated that the Defendant was "a great" candidate for treatment but ultimately "a terrible" candidate for alternative sentencing. He noted that the Defendant continued to lie even up until her sentencing hearing and that she had been given numerous chances and failed to take the opportunity to benefit from them. Further, the trial court noted that the Defendant's extensive record, including charges for failure to appear and numerous violations of probation sentences, indicated that the Defendant was a poor candidate for alternative sentencing. The trial court concluded that the Defendant's potential for reform without incarceration was "very, very low" and thus an alternative sentence was not appropriate in this case. The trial court ordered the Defendant to serve her sentence in the Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court abused its discretion when it denied an alternative sentence. She maintains that the statutory presumption in favor of alternative sentencing in this case should prevail. The State responds that the trial court properly denied the Defendant alternative sentencing. We agree with the State.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2014) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2014). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v.* Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

5

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2014). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

The record supports the trial court's findings in this case. The trial court's decision to deny an alternative sentence was based upon the Defendant's extensive criminal record, history of unsuccessful past attempts at completing alternative sentences, the lack of potential for rehabilitation absent incarceration, and lack of truthfulness. These factors are all well-supported by the evidence. The State submitted numerous convictions and charges against the Defendant evidencing an extensive criminal record. The Defendant has demonstrated a history of non-compliance with numerous prior alternative sentences and has failed to appear in court when required. The State presented evidence that the Defendant lied during the guilty plea submission hearing when she told the trial court that she had almost graduated from the University of Alabama when, in fact, she was never enrolled at the University of Alabama. While the Defendant was eligible for probation because her sentence was less than ten years, she failed to carry her burden of proving suitability for probation.

The trial court considered the pertinent facts of this case and appropriate sentencing principles and denied alternative sentencing based on the Defendant's criminal record, past failed attempts at less restrictive measures, lack of potential for rehabilitation, and untruthfulness with the trial court. The Defendant has not established that the trial court abused its discretion by denying her request for an alternative sentence. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly sentenced the Defendant. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE